**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ACUITAS THERAPEUTICS INC., <br><br> Plaintiff, <br><br> v. <br><br> GENEVANT SCIENCES GMBH, *et al.*, <br><br> Defendants. | Civil Action No. 23-4200 (ZNQ) (TJB) <br><br> **OPINION** |

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon a Motion to Dismiss filed by Defendants Genevant Sciences GmbH and Arbutus Biopharma Corp. ("Defendants") (ECF No. 13.) Defendants filed a Brief in Support of the Motion. ("Moving Br.", ECF No. 13-1.) Plaintiff Acuitas Therapeutics Inc. ("Plaintiff") filed a Memorandum in Opposition ("Opp.", ECF No. 20) and Defendants filed a Reply Brief (ECF No. 27).

The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will GRANT the Motion to Dismiss and DISMISS the Complaint WITHOUT PREJUDICE.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff develops lipid nanoparticle ("LNP") formulations for delivering mRNA therapeutics. (*See* Compl. ¶ 6.) It supplies and licenses its LNPs to non-parties Pfizer and BioNTech for use in COMIRNATY®, a COVID-19 vaccine marketed by Pfizer and BioNTech.

(Compl. ¶¶ 3, 44.) Plaintiff seeks a declaratory judgment that the Comirnaty vaccine does not infringe Arbutus's patents. (*Id.* ¶¶ 3, 32.)

The parties' dispute began in November 2020 when Defendants sent Pfizer and BioNTech a first letter notifying them that the Comirnaty vaccine might infringe eight of Defendants' patents. (*See id.* ¶ 35.) Defendants sent two more notice letters in October 2021 and June 2022 that identified additional patents. (*Id.* ¶¶ 36–37.) In March of 2022, after the second letter, Plaintiff filed suit against Defendants in New York seeking a declaration of noninfringement and invalidity of the patents identified in the letters (the "New York DJA Suit"). (*Id.* ¶ 38.) In April 2023, Defendants began their own suit against Pfizer and BioNTech in this court alleging infringement of five of their patents. (*Id.* ¶ 40.) That matter is before the undersigned as *Arbutus Biopharma Corp., et al. v. Pfizer Inc., et al.*, 23-cv-1876 (the "New Jersey Infringement Suit"). In response, Plaintiff withdrew the New York DJA Suit in August 2023 and filed the present suit. (*Id.* ¶ 40–41.) In this suit, Plaintiff again seeks a declaratory judgment that ten of Defendants' patents are invalid and not infringed. (*Id.* ¶ 42.)

## II.   JURISDICTION

Based on the claims alleged by the Complaint, the Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), and 2201.

## III.   LEGAL STANDARD

### A.   MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Federal Rule of Civil Procedure 12(b)(1) allows a court to dismiss a complaint for lack of subject matter jurisdiction because a party lacks standing. *Ballentine v. United States*, 486 F.3d

2

806, 810 (3d Cir. 2007).[1] Two types of challenges can be made under Rule 12(b)(1): a facial attack or a factual attack. *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 632 (3d Cir. 2017). A facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to consider the allegations of the complaint as true." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (internal quotation marks and citations omitted). A factual challenge "attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise present[ing] competing facts.' " *Id.* (quoting *Const. Party of Penn. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)).

"In reviewing facial challenges to standing, [courts] apply the same standard as on review of a motion to dismiss under Rule 12(b)(6)." *In re Horizon*, 846 F.3d at 633. Courts "only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Const. Party of Penn.*, 757 F.3d at 358 (citations omitted). When considering a factual challenge, by contrast, "a court may weigh and consider evidence outside the pleadings." *Id.* (quotation marks and citations omitted).

### B.   ARTICLE III STANDING

The Declaratory Judgment Act ("DJA") provides that,

> in the case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

---

[1] Here, the Court applies Third Circuit law to those aspects of a standing analysis that do not implicate patent law. *See Salix Pharm., Ltd. v. Norwich Pharm. Inc.*, 98 F.4th 1056, 1069 (Fed. Cir. 2024); *In re Lipitor Antitrust Litig.*, 855 F.3d 126, 148 (3d Cir. 2017).

28 U.S.C. § 2201(a). The Supreme Court has explained that the "actual controversy" requirement of the Act refers to the types of "cases" and "controversies" justiciable under Article III. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007) (citation omitted).

In the patent context, the Court of Appeals for the Federal Circuit has articulated the considerations for assessing whether a plaintiff seeking a declaratory judgment has met the case-or-controversy requirement of Article III.[2] *See Mitek Sys., Inc. v. United Servs. Auto. Ass'n*, 34 F. 4th 1334 (Fed. Cir. 2022).

Under *Mitek*, to determine whether a plaintiff might reasonably be liable for infringement, a district court should look to the elements of the potential cause of action, then consider both the patent claims at issue and the alleged facts concerning the plaintiff in light of those elements. *Id.* at 1343. Although the plaintiff is not obligated to prove, for jurisdictional purposes, that it infringes the patents-in-suit (which is what it ultimately seeks to disprove in its case), "there must be allegations by the patentee or other record evidence that establish at least a reasonable potential that infringement claims against him could be brought." *Id.* (quoting *Microsoft*, 755 F.3d at 905). "This requires separate consideration of the separate types of infringement (notably, direct infringement, inducement of infringement, and contributory infringement) of the claims of the patents-in-suit, and of the bearing on any infringement of such claims of the fact stressed by the district court . . . ." *Id.*

### C.  A DISTRICT COURT'S DISCRETION TO DECLINE TO HEAR A DECLARATORY JUDGMENT ACTION

Importantly, the DJA provides that courts "*may* declare the rights and other legal relation of any interested party seeking such declaration." 28 U.S.C. § 2201 (emphasis added). Based on

---

[2] The Court applies the law of the Court of Appeals for the Federal Circuit to this issue because an assessment of liability for patent infringement implicates substantive patent law. *See In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 803 (Fed. Cir. 2000).

4

this permissive language in the statute, the Supreme Court has held that its "textual commitment to discretion" vests federal courts with "unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995) (citations omitted).

In *Mitek*, the Federal Circuit separately addressed the standard for discretionary dismissals of declaratory judgment actions.[3] It counseled that:

> as long as a district court "acts in accordance with the purposes of the Declaratory Judgment Act and the principles of sound judicial administration, [it] has broad discretion to refuse to entertain a declaratory judgment action." *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 813–14 (Fed. Cir. 1996). But, consistent with the constraints imposed by the noted statutory purposes and judicial-administration principles, we have insisted: "There must be well-founded reasons for declining to entertain a declaratory judgment action." *Capo, Inc. v. Dioptics Medical Products*, 387 F.3d 1352, 1355 (Fed. Cir. 2004); *see also Micron*, 518 F.3d at 903–05; *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 936 (Fed. Cir. 1993). As an example, we explained in *Ford Motor Co. v. United States* that, "[w]hile the existence of another adequate remedy does not necessarily bar a declaratory judgment, district courts may refuse declaratory relief where an alternative remedy is better or more effective." 811 F.3d 1371, 1379–80 (Fed. Cir. 2016) (citations omitted); *see also* 10B *Wright & Miller* § 2758 & n.6 (4th ed. Apr. 2022 Update).

*Mitek*, 34 F. 4th at 1347.[4] In short, the Court construes *Mitek* to require district courts to provide good reason for dismissing a declaratory judgment action.

---

[3] The Court applies the law of the Court of Appeals for the Federal Circuit to this issue because that court has asserted jurisdiction over it. *See Commc'ns Test Design, Inc .v. Contec, LLC*, 952 F.3d 1356, 1362 (Fed. Cir. 2020) (the "question whether to accept or decline jurisdiction in an action for a declaration of patent rights in view of a later-filed suit for patent infringement impacts this court's mandate to promote national uniformity in patent practice. Because it is an issue that falls within our exclusive subject matter jurisdiction, we do not defer to the procedural rules of other circuits.") In this Court's estimation, the fact that the present DJA suit was filed after the parallel infringement suit rather than before would not alter the Federal Circuit's assertion of jurisdiction.

[4] The Court notes in passing that in the same context the Third Circuit directs district courts to apply a multi-factor test when considering whether to exercise jurisdiction over a declaratory judgment action, and it appears to be largely consistent with the Federal Circuit's call for "well-founded reasons." *Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 282 (3d Cir. 2017) (district courts are to consider whether a parallel proceeding is underway, then weigh a list of eight, non-exhaustive factors).

## IV. DISCUSSION

The Motion seeks dismissal for lack of subject matter jurisdiction on the basis that the Complaint fails to allege an actual controversy between the parties. In the alternative, it requests that the Court exercise its discretion to decline to hear this action.

### A.   WHETHER THE COMPLAINT ALLEGES A CASE OR CONTROVERSY UNDER ARTICLE III

The Motion brings a facial challenge to subject matter jurisdiction based on the Complaint. Defendants raise three arguments[5] that the Court considers below.

#### 1.   Induced Infringement

The Complaint includes allegations that Plaintiff is faces a risk liability for induced infringement. (Compl. ¶ 51.) Defendants argue that a claim for induced infringement requires a patentee to allege that a defendant knowingly undertook an affirmative act to encourage infringement. (Moving Br. at 13.[6]) In Defendants' view, the Complaint in this matter fails to state an actual controversy because it does not allege that they have asserted Plaintiff "encouraged" Pfizer/BioNTech to perform acts that would infringe one or more limitations of the claims in Defendants' patents. (*Id.*)

Plaintiff takes a more expansive view of what can support a case or controversy, emphasizing that "[a]ll that is required on this facial challenge is that there 'be allegations by the patentee or other record evidence that establish at least a *reasonable potential* that such a claim

---

[5] Defendants also raise a fourth argument in the Motion that Plaintiff neglects to address it in its opposition. Defendants contend that the Complaint fails to support its claim that Plaintiff faces the possibility of liability for contributory infringement. (Moving Br. at 10–11.) Defendants are correct. Although the Complaint repeatedly raises the specter of contributory infringement liability (Compl. ¶¶ 6, 51, 54) it does so in a conclusory fashion without supporting factual allegations. Moreover, Plaintiff's opposition to the Motion is conspicuously silent on contributory infringement, and tellingly states under a heading in its brief devoted to indirect infringement that "[t]he issue here is induced infringement under 35 U.S.C. ¶ 271(b)." (Opp. at 15.) Accordingly, based on both inadequate pleading in the Complaint and waiver on the present motion, the Court concludes that the Complaint fails to state a case or controversy as to Plaintiff's potential liability for contributory infringement.

[6] For clarity, the Court cites to the parties' briefs by their internal pagination rather than the one imposed by the CM/ECF system.

could be brought." (Opp. at 15) (quoting *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 905 (Fed Cir. 2014) (emphasis added by Plaintiff). Plaintiff also quotes authority for the proposition that "[w]hen the holder of a patent with system claims accuses a customer of direct infringement based on the customer's making, using, or selling of an allegedly infringing system in which a supplier's product functions as a material component, there may be an implicit assertion that the supplier has indirectly infringed the patent." (Opp. at 15–16) (quoting *Arris Grp., Inc. v. British Telecomms.*, 639 F.3d 1368, 1375 (Fed. Cir. 2011).) Plaintiff then argues that "Defendants' complaint against Pfizer and BioNTech implies that [Plaintiff's] lipids are a 'material component' in Comirnaty." (*Id.* at 15–16.) As support, Plaintiff quotes three counts from Defendants' complaint in the New Jersey Suit that identify two of Plaintiff's LNPs as factual bases for Pfizer/BioNTech's purported infringement. (*Id.* at 16.)

The Court disagrees with Plaintiff's position. First, its selected language from *Microsoft* to the effect that there need only be "a reasonable potential that a claim might be brought" divorces that broad statement of principle from the detailed infringement analyses that are both required and applied by the Federal Circuit in *Microsoft*. In relevant part, the *Microsoft* court observed that establishing a case or controversy entails a "look to the elements of potential cause of action" and it confirmed that induced infringement requires a showing of an inducer's "knowledge and affirmative act of encouragement." 755 F.3d at 904–905 (citation omitted). In two instances, the Federal Circuit found that the inducer's instruction manuals and online documentation established the scienter element for induced infringement. *Id.* at 905. In a third instance, it found that documentation provided by a third party did not establish the scienter element of the defendant. *Id.* Thus, *Microsoft* does not stand for so broad a principle as Plaintiff appears to rely upon.

Second, Plaintiff's reliance on *Arris* in support of its induced infringement position is also misplaced. The passage it quotes to the effect that "there may be an implicit assertion that the supplier

7

has indirectly infringed the patent" refers to *contributory* infringement, not induced infringement. In fact, the passage's own reference to a "material component," parallels language from the part of the infringement statute addressing contributory infringement. *Compare Arris*, 639 F.3d at 1375 *with* 35 U.S.C. § 271(c) ("Whoever . . . sells . . . a component of a patented. . . composition . . . constituting a material part of the invention"). It should also have been clear from the *Arris* decision itself because the opinion addresses contributory infringement, not induced infringement. In fact, *Arris*'s single holding explicitly states as much: "[f]rom our consideration of all the circumstances . . . there is an Article III case or controversy between [the parties] regarding [plaintiff's] potential liability for contributory infringement."   639 F.3d at 1375.   In short, the "implicit assertion" of indirect infringement articulated by *Arris*, is not applicable to induced infringement. *See also Microsoft*, 755 F.3d at 905 ("[S]imply selling a product capable of being used in an infringing manner is not sufficient to create a substantial controversy regarding inducement.")

For these reasons, the Court sets aside Plaintiff's briefing on this issue. The Court nevertheless proceeds through an Article III analysis to meet its independent obligation to confirm its subject matter jurisdiction. *See Henderson v. Shinseki*, 562 U.S. 428, 434 (2011). The Court begins, as advised in *Mitek*, by looking to the elements of a claim for induced infringement.

35 U.S.C. § 271(b) states that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." A claim for induced infringement must allege a direct infringement and that the alleged inducer "knowingly induced infringement and possessed specific intent to encourage another's infringement." *See Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339, 1351 (Fed. Cir. 2022).

As to the next steps, considering "the patent claims at issue" and "the alleged facts concerning the plaintiff," the Complaint does not provide the necessary information. In relevant part, the Complaint merely alleges that:

8

> 51. . . . Indeed, Arbutus's New Jersey Action explicitly identifies Acuitas's lipids and LNPs while alleging that COMIRNATY® infringes their patents. That creates a risk of Acuitas itself facing the possibility of liability under 35 U.S.C. § 271(b) for inducing its customers' infringement or under § 271(c) for contributing to it.
>
> 52. On November 23, 2020 . . . they sent their first 35 U.S.C. § 287(a) notice to Pfizer and BioNTech . . . . Arbutus and Genevant sent two more patent-infringement notices to Pfizer and BioNTech—with the last notice sent on June 3, 2022—and sued Pfizer and BioNTech for patent infringement on April 4, 2023, in this District.

(ECF No. 1.) As is clear from this text, the Complaint is devoid of allegations with respect to patent claims that are being asserted in the New Jersey Suit that would support Plaintiff's declaratory judgment claims in this case. Perhaps more clearly, it lacks the requisite allegations that Defendants encouraged Pfizer and/or BioNTech to infringe Plaintiff's patents, and that Defendants had the specific intent to do so.[7] Accordingly, the Court finds that the Complaint fails to state a case or controversy as to Plaintiff's alleged induced infringement.

    2.    <u>Indemnity Liability</u>

The Motion also challenges the adequacy of the Complaint's allegations of a case or controversy based on Plaintiff's alleged liability for indemnification under any agreements with Pfizer and/or BioNTech. Defendants contend that the bare allegation in the Complaint that Plaintiff's agreement with BioNTech contains an indemnification agreement is insufficient as a matter of law. (Moving Br. at 16–17.) They raise that same argument with respect to the adequacy of Plaintiff's allegation that BioNTech has requested indemnification. (*Id.*)

In response, Plaintiff insists that the Complaint's allegations are sufficient because it pleads that there is a license agreement with BioNTech that includes indemnification provisions and that

---

[7] For example, there are no allegations that Defendants provided any sort of instruction or user documentation to Pfizer/BioNTech of the sort found dispositive by the Federal Circuit in *Microsoft*, as noted above.

BioNTech has sought indemnification in three letters which name all of the patents in the present suit. (Opp. at 12–15.) In support of its position, Plaintiff cites *Signify N. Am. Corp. v. Menard, Inc.*, Civ. No. 22-706, 2023 WL 5647789 (W.D. Wis. Aug. 31, 2023).

Unfortunately for Plaintiff, *Signify* does not help its case. In *Signify*, large mail-order retailer Menard was sued by patentee Signify for selling LED lighting products that infringed six patents. 2023 WL 5647789, at *1. Menard filed third-party complaints against over a dozen companies that manufactured the accused lighting products. *Id.* Four of the third-party defendants asserted DJA cross-claims against Signify for invalidity and noninfringement. *Id.* In response, Signify moved to dismiss those claims for lack of standing. *Id.* In relevant part, the district court opined as follows:

> . . . Signify cites statements in *Arris* and *Microsoft* that a supplier has standing when it is "obligated" to indemnify its customer. Signify says that three of the four third-party defendants at issue have denied that they have a duty to indemnify Menard, so the court can't determine at this point whether they are so obligated. But the court of appeals has rejected that argument: "[W]e have never held that the validity of an indemnity demand, i.e., the applicability of an indemnity agreement to the demander's circumstances, needs to be conceded to establish subject-matter jurisdiction." *Mitek Systems, Inc. v. United Services Automobile Association*, 34 F.4th 1334, 1346 (Fed. Cir. 2022). Rather, the question is whether there is a "reasonable potential" that the third-party defendants could be required to indemnify Menard. *Microsoft*, 755 F.3d at 905. That standard is met in this case.
>
> Richpower admits that it has a duty to indemnify Menard . . . so Richpower has standing to sue even under Signify's view of the law. Luminex and Best Lighting have not conceded a duty to indemnify, but they admit in their answer that they have an agreement with Menard that includes language requiring them to "defend, indemnify, and hold Menard harmless from and against all claims, damages, and/or expense(s) on account of . . . any actual or alleged violation or infringement of . . . any patent . . . arising from Menard's use, sale or offering for sale of any goods covered by the purchase order and/or services provided by" the third-party defendants. . . . That admission is enough to show a reasonable potential of liability.
>
> Alert Reel's claim is not as clear cut as the others. It denies that it has an indemnification agreement with Menard. . . . But Alert Reel

10

> hasn't challenged the sufficiency of Menard's allegation to the contrary, and Alert Reel hasn't otherwise sought dismissal of Menard's indemnity claim. Unless that claim is dismissed, there is a reasonable potential that Alert Reel could be required to indemnify Menard.
>
> The court concludes that Richpower, Best Lighting, Alert Reel, and Luminex have standing to seek declaratory relief on claims related to the accused products that they manufacture.

*Id.* at *7–8. The first excerpted paragraph from the *Signify* decision is of course correct—and by extension so is Plaintiff in this case—that the Federal Circuit has held that an admission of the validity of an indemnity claim is not required to establish a case or controversy. But this states just one of the two guardrails erected by the Federal Circuit in this context. It erected the opposite guardrail in *Microsoft*, when it explicitly rejected the notion that merely because a customer was sued, a supplier had standing to sue. 755 F.3d at 904 ("To the extent that Appellees argue that they have a right to bring the declaratory judgment action solely because their customers have been sued for direct infringement, they are incorrect.") Accordingly, something less than an admission to indemnity and something more than a mere customer suit is required in this context.

The second excerpted paragraph of *Signify* finds the middle of the road when the Federal Circuit discusses the positions of Luminex and Best Lighting. As the court notes, neither of them (like Plaintiff in this case) conceded a duty to indemnify Menard. But the court also observes that Luminex and Best Lighting admitted in their answers[8] that their indemnification agreements included language obligating them to

> "defend, indemnify, and hold Menard harmless from and against all claims, damages, and/or expense(s) on account of any actual or alleged violation or infringement of . . . any patent arising from Menard's use, sale or offering for sale of any goods covered by the

---

[8] Obviously, the posture of the case in *Signify* was different insofar as the suppliers were joined to the main infringement suit rather than having brought their own cases. This meant that the district court had the benefit of Menard's third-party complaint against the suppliers, which prompted Luminex and Best Lighting to "admit in their answer" to the specific language in their indemnification agreement. Here, the only pleading available to this Court is Plaintiff's Complaint.

11

purchase order and/or services provided by" the third party defendants.

2023 WL 5647789, at *7. The *Signify* court found that this admission was enough to show a reasonable potential of liability. *Id.*

In comparison, the Complaint in this matter is far less forthcoming than the referenced answers in *Signify*. The Complaint asserts merely that there is an indemnification agreement between Plaintiff and BioNTech, and that demands for indemnity have been made. (Compl. ¶ 53.) No details as to the language of the agreement are provided. Without more information in the Complaint as to relevant indemnification terms, the Court finds that Plaintiff has not met its burden to establish the reasonable potential of its liability under that agreement. The Court therefore finds that the Complaint fails to plead a case or controversy regarding Plaintiff's liability for indemnification.

3. Additional Theories

Defendants raise two additional challenges to the Complaint's showing of a case or controversy. They first argue that Plaintiff's alleged economic harm is insufficient to confer jurisdiction. Unsurprisingly, Plaintiff disagrees. They maintain that without a declaratory judgment, "Acuitas faces (i) uncertainty with respect to its use of its technology free from the threat of patent infringement, (ii) the possibility of liability under 35 U.S.C. § 271(b) for inducing its customers' infringement, and (iii) the possibility of indemnity obligations to its customers under their contracts." (Opp. at 19.) The Court has already rejected the latter two arguments. What remains is Plaintiff's first argument. Plaintiff's language, however, is less than clear. To the extent that Plaintiff is concerned about its own freedom to use LNPs without threat of direct infringement, the Complaint alleges no facts supporting such a claim, *i.e.*, the Complaint fails to show "that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127. The

Court therefore finds that the Complaint states no case or controversy on this issue. To the extent that Plaintiff is concerned about its current or potential customers' freedom to operate, this is an economic theory that has already been rejected by the Federal Circuit. *Arris*, 639 F.3d at 1374 (finding that threat of infringement suit against existing client as an "economic injury" may confer standing in cases challenging government action, but concluding that "we have not held that economic injury alone is sufficient to confer standing in patent cases seeking a declaratory judgment.") The Court therefore further finds that the Complaint states not case or controversy on this issue either.

Insofar as the Court concludes that the Complaint as a whole fails to plead a case or controversy for the reasons set forth above, it does not reach Defendant's second, case-or-controversy argument for dismissing the additional five patents Plaintiff attempts to challenge in the Complaint.[9]

### B. WHETHER THE COURT SHOULD EXERCISE ITS DISCRETION TO DISMISS THIS SUIT IN FAVOR OF THE CO-PENDING INFRINGEMENT SUIT

In the alternative, Defendants ask the Court to exercise its discretion to dismiss this suit in favor of addressing validity and infringement in the New Jersey Suit. They argue that this case would only complicate and needlessly expand the same issues already before the Court in that case. (*Id.* at 24.) According to Defendants, Plaintiff's failure to take over or even participate in the New Jersey Suit indicates that Plaintiff's interests and Pfizer/BNT's interests are also aligned in that case. (*Id.* at 23.)

---

[9] Plaintiff's opposition raises the procedural point that Defendants should be precluded from these last two arguments because they failed to identify them as part of the undersigned's pre-motion practice. (Opp. at 18.) In the ordinary course the Court would agree, but because the parties' dispute is over subject matter jurisdiction (which cannot be waived) and the Court has an independent obligation to address that issue, it opines on Defendants' final two points.

13

Plaintiff maintains that there is a justiciable controversy between the parties in this case. (Opp. at 19–21.) It asserts that Pfizer and BioNTech have already alleged that Plaintiff is necessary to resolve Defendants' patent claims against them. (*Id.* at 21.) It advises that it has participated in the New Jersey Suit by attending the initial scheduling conference and discussing coordination before the magistrate judge. (*Id.*)

For obvious reasons, the co-pending New Jersey Suit factors heavily into the Court's consideration of whether to exercise its discretion to dismiss this case. Clearly, a dismissal would have the benefit of avoiding duplicative litigation. With respect to competing remedies, the New Jersey Suit is broader in scope insofar as the relief sought there encompasses not just determinations of infringement and invalidity, but also any injunctive relief and/or damages against Pfizer and BioNTech that may be warranted. Admittedly, the New Jersey Suit is also narrower in another sense because it implicates only five of the ten patents that Plaintiff hopes to challenge here. But it is entirely likely that a ruling as to the first five of the patents in the New Jersey Suit will inform the parties' decision as to whether to proceed to litigate the remaining five. Finally, Plaintiff is understandably eager to present its own inventorship story—it devotes sixteen paragraphs of its Complaint and a portion of its briefing on this Motion to the issue—but it has not articulated a reason why its evidence cannot be presented in the New Jersey Suit, particularly given its claims that it is already coordinating efforts with Pfizer and BioNTech. For all of these reasons, the Court therefore finds that, even if it were to have found a justiciable controversy was pled, the Court would exercise its discretion to dismiss this suit.

## V. **CONCLUSION**

For the reasons stated above, the Court will GRANT the Motion to Dismiss and DISMISS the Complaint WITHOUT PREJUDICE based on lack of subject matter jurisdiction. An appropriate Order will follow.

Date: **May 20, 2024**

                                             s/ Zahid N. Quraishi
                                             **ZAHID N. QURAISHI**
                                             **UNITED STATES DISTRICT JUDGE**